STURGIS, In re. See Case No. 13,565.

# Case No. 13,573.

STURGIS et al. v. CARY et al.

[2 Curt. 382:[1] 18 Law Rep. 387.]

Circuit Court, D. Massachusetts. May Term, 1855.

AVERAGE—COMMISSION TO SHIP-OWNER—LOCAL USAGE.

1. The rule laid down in Barnard v. Adams, 10 How. [51 U. S.] 270. that the ship-owner is entitled to a commission upon the amount contributed for in general average. is not founded on a local usage, but upon the law merchant; and a particular local usage in contravention thereof is not binding on those. who have entered into no contract with reference to such usage.

[Cited in brief in Howard v. Great Western Ins. Co., 109 Mass. 387.]

2. The right to receive contribution in general average is not founded on contract, but in a principle of equity.

[Approved in Ralli v. Troop, 157 U. S. 386, 15 Sup. Ct. 666.]

[Cited in Marwick v. Rogers (Mass.) 39 N. E. 781.]

[This was a bill in equity by Lathrop L. Sturgis and others against Thomas G. Cary and others to obtain contribution in general average. It was held that the complainants

---

[1] [Reported by Hon. B. R. Curtis, Circuit Justice.]

had a claim, and reference was had to a master. Case No. 13,572. The cause is now heard on exceptions to the master's report.]

F. C. Loring, for exception.
R. Fletcher, contra.

CURTIS, Circuit Justice. At the last term, the complainants had a decree, that they were entitled to contribution from the respondents, towards a general average loss, and the cause was referred to a master to take an account, and report the several sums to be contributed by the defendants. [Case No. 13,572.] He has now made his report, and one exception has been taken thereto; which raises the question whether the owners of the vessel are entitled to charge, among the items to be contributed for in general average, a commission of two and one half per centum on the amount of the general average loss, to be paid to the owners of the vessel and freight, as a compensation for collecting the contributory shares. This charge was disallowed by the master, upon the ground that the decision of the supreme court of the United States in Barnard v. Adams, 10 How. [51 U. S.] 270, allowing a similar charge, rested upon a local usage in New York, and that it appeared in evidence before him that the usage in Boston was, not to allow such a charge. The language of Mr. Justice Grier, in delivering the opinion of the court in that case, is susceptible of the interpretation put upon it by the master, and the statement of the case in the printed report does not show how the point arose, or upon what facts it came before the court. I have procured a copy of the record, and find that at the trial in the circuit court no evidence of any usage, local or general, was offered; that the presiding judge instructed the jury, as matter of law, that the charge was correct, and that this instruction was excepted to. The supreme court sustained this ruling. I must take it therefore to be settled, by an authority which is binding on this court, that under the general law merchant the ship-owner has the right to make this charge, and upon this state of the law, a question, not without difficulty, arises in this case: it is whether the local usage in Boston, not to allow such a charge, can control the rights of these complainants.

There is no doubt that contribution is to be made, and the items which form the amount to be contributed, are to be ascertained and allowed, according to the law of the place where the adjustment is required by law to be made, which in this case was Boston, the port of destination. But does a local usage of that particular port, in opposition to the general rule of the law merchant, form one of the legal rules for adjusting a general average loss at that port? Local usages sometimes have a binding effect, even when they are not in conformity with general rules of law, provided they are not unreasonable in themselves. But this effect is allowed to them, upon the ground that parties have the right to renounce the ben-

efit of a rule of law, and to contract in reference to a different rule; and where the usage is so general that the parties must be presumed to have contracted in reference to it, or where it so affected the subject-matter of the contract, that both were reasonably bound to know the usage, their consent to be bound by it and to waive the rule of law is implied in many cases. But these, so far as I know, are all cases of contract; and I cannot understand how the necessary foundation of a presumed consent, can be laid in any other case. But this right to contribution does not arise from contract. It depends upon a principle of natural justice, that they who have received a common benefit from a sacrifice voluntarily made by one engaged in a common adventure should unite to make good the loss which that sacrifice occasioned. Emerigon says (volume 1, p. 587): "Equity requires that they whose effects have been preserved by the loss of another's merchandise, should contribute to the damage," and he cites a passage from the Digest which places the right solely upon the ground of its equity. In Deering v. Earl of Winchelsea, 2 Bos. & P. 270, 1 Cox, 318, Lord Chief Baron Eyre examined this subject of contribution with much ability, and came to the conclusion that "the bottom of contribution is a fixed principle of justice, and is not founded on contract." So Mr. Justice Story has declared (1 Story, Eq. Jur. § 490), speaking of general average: "The principle upon which this contribution is founded, is not the result of contract, but has its origin in the plain dictates of natural law." This being so, I cannot perceive upon what ground I can declare that these complainants have consented to waive the benefit of a rule of law, which I must consider exists in Boston, as well as in New York, and all other ports in the United States. It is true, this rule is said by the supreme court to rest upon the usage and custom of merchants and average brokers. But the same might be said of a large part of those rules of the commercial law which are as well settled and as constantly administered by the courts, as any statutes enacted by the legislature. It seems to me also, that if, as the supreme court declare, it is a duty thrown on the ship-owner, by the common disaster, to collect and pay the contributions, a usage not to indemnify him for discharging this troublesome duty, would not be consistent with the principle which requires contribution to be made; and it would be difficult to sustain its reasonableness. See Eager v. Atlas Ins. Co., 14 Pick. 141; Gallatin v. Bradford, 1 Bibb. 209; Kendall v. Russell, 5 Dana, 501; Jordan v. Meredith, 3 Yeates, 318.

It was urged that a commission of two and one half per cent. on the whole amount of the general average contributions, to be paid in every case, was a disproportional, and in many cases would be an excessive charge. This may be sometimes true, as it is sometimes true in all business in which a fixed rate of commission is paid pro opere et labore. But the prac-

tice of merchants to make and receive compensation for services by a fixed rate of commission is almost universal, and must be deemed to be on the whole, just and equal in its general operation, or it would not have thus obtained. It may be added also, that it has been adopted by the legislation of this country in a great many cases.

It was also objected, that in the adjustment presented to the master by the complainants, this charge was set down as to be allowed to the complainants' agents. It was explained, that the complainants, residing in another state, did not personally attend to this business, but employed agents to do it for them, and this was the reason of the form of the charge. It does not seem to me that the form is important. The allowance is to be made to the complainants for their services; if they choose to specify, when they claim it, that these services were rendered by them through agents, and, therefore, ask that it may be allowed for the services of their agents, instead of saying for their own services through their agents, there is a deviation from the true form, but the substance is not materially wrong.

The exception to the master's report must be allowed, and the report corrected by adding this item.