## LA FONCIERE COMPAGNIE D'ASSURANCES CONTRE LES RISQUES DE TRANSPORT DE TOUTE NATURE v. DOLLAR.

(Circuit Court of Appeals, Ninth Circuit. October 3, 1910.)

No. 1,688.

INSURANCE (§ 477*)—MARINE INSURANCE—GENERAL AVERAGE EXPENSE—TOW-AGE TO PORT OF NECESSITY.

A steamer, insured under a term policy providing that the insurer should not be liable for any particular average loss not amounting to 5 per cent. net, was proceeding to Hoquiam, in Gray's Harbor, for a cargo of lumber for San Francisco, when, in entering the harbor, she broke her rudder, rendering her unseaworthy. It was agreed between owner and insurer that San Francisco was the nearest port where she could be properly repaired, and by agreement she was towed to Hoquiam, loaded with lumber, and towed to San Francisco, where she was repaired. *Held*, that the voyage to San Francisco was one of necessity to a port of repairs, and the expense of the towage was in the nature of a general average charge, for the benefit of both owner and insurer, and for which the insurer was liable.

[Ed. Note.—For other cases, see Insurance, Cent. Dig. §§ 1248, 1249; Dec. Dig. § 477.*

Marine insurance, general average, see note to Pacific Mail S. S. Co. v. New York, H. & R. Min. Co., 20 C. C. A. 357.]

Appeal from the District Court of the United States for the Northern District of California.

Suit in admiralty by Robert Dollar, trustee, against La Fonciere Compagnie D'Assurances Contre Les Risques De Transport De Toute Nature. Decree for libelant, and respondent appeals. Affirmed.

For opinion below, see 162 Fed. 563.

Andros & Hengstler, for appellant.

Charles Page, Edward J. McCutchen, and Samuel Knight, for appellee.

Before GILBERT, ROSS, and MORROW, Circuit Judges.

ROSS, Circuit Judge. The appellant insured the interest of the appellee in the steamer Grace Dollar, at San Francisco, on the 20th day of January, 1903, for the term of one year, from loss by reason of perils of the sea; the insurer, however, not to be liable for any particular average loss not amounting to 5 per cent. net. The action was brought

in the court below by the appellee against the appellant upon that policy, and the case was there submitted upon an agreed statement of facts, which recites that:

"While the policy was in force, viz., on August 31, 1903, the steamer Grace Dollar sailed in ballast for Hoquiam, a loading port in Gray's Harbor, there to load a cargo of lumber and to bring the same back to San Francisco. While entering Gray's Harbor, the master, without fault on his part, and by reason of a sea peril, missed the channel and touched bottom, thereby severely injuring his vessel's rudder. A jury rudder was fitted on, and she was able to make the harbor under her own steam. From there she was towed to Hoquiam, where she was filled with lumber in her forward part, so that her stern was brought out of the water high enough to allow of her being beached, and a better jury rudder fitted. She was thereafter beached, a jury rudder was fitted, and she was again towed off, and then taken to Wood's Mill, in Gray's Harbor, where she loaded a full cargo of lumber; the insurers having consented to towage to San Francisco in her disabled condition, provided she should take a cargo of lumber. On September 13th she started for San Francisco in tow of the steam tug Rival, at which port she arrived in due course. There was no opportunity or facility at any of the points named, except San Francisco, to obtain the repairs necessary to make the ship seaworthy. Like facilities existed at Portland, Or., but by agreement between the parties San Francisco was accepted as the nearest port at which this could be done, and under this agreement the vessel proceeded as aforesaid to San Francisco, instead of Portland. Gray's Harbor is a safe place at which a vessel may lie protected against the weather at all times."

Upon her arrival at San Francisco, the damage sustained by the vessel was repaired, the costs of which, as well as the towage, being paid by her owners. Thereupon an adjustment was made in which the cost of towage to San Francisco was treated as a general average charge. The libelant, having paid the charges according to the adjustment so made, brought the action to recover the amount thereof from the insurance company, which denied liability on the ground that the cost of towage was not properly a general average charge, but a particular average expense, and was not equal to 5 per cent. of the value of the vessel.

The agreed statement of facts further shows that:

"If the said expense of towage to San Francisco be in law a particular average charge, the libelant's proportion of the amount of this and other charges of a particular average is less than 5 per cent. net of the amount insured by respondent's policy, and libelant under such conditions has no claim or loss thereunder, by reason of the limitation of clause 1 of the policy, which provides that no claim of partial loss or particular average shall in any event be paid under said policy unless amounting to at least 5 per cent. net. If the said towage expense was properly stated in the said adjustment as a general average charge, the insurance, including the respondent, would be liable, under the policy, for the amount thereof, and, in such event, the respondent's liability under the said policy for its proportional share of all general average expense is the sum of $41.25."

The sole question presented for decision is whether the cost of towing the Grace Dollar from Gray's Harbor to San Francisco was a general or a particular average expenditure. The court below held that it was in the nature of a general average expense, basing its decision largely upon the decision of Judge Story in the case of Potter v. Ocean Insurance Company, 3 Sumn. 27, Fed. Cas. No. 11,335.

That was an action on a policy of insurance dated March 4, 1836,

whereby the Ocean Insurance Company insured Potter "fourteen thousand dollars on the bark Hannah, at sea and in port, for and during the term of one year, commencing the risk on the 3d of March, 1836, at noon. Should this vessel be at sea on a passage on the expiration of the year, the risk to continue at pro rata premium until her arrival at her port of destination, paying one-half per cent. additional premium, etc., at and after the rate of five per cent. premium." The policy contained, among other things, a clause that "the company are not liable for wages or provisions, except for general average." On the trial it appeared in evidence that the bark Hannah sailed from New Orleans on the 4th of November, 1836, with a cargo destined for and to be landed at Tampico. In the course of the voyage, on the 9th of the same month, in a severe squall, both of the masts were carried away; and on the 11th of the same month a heavy gale was experienced, in which a heavy sea struck the stern boat from the stern and stove it to pieces; and on the 5th of December following the bark arrived at Tampico and delivered her cargo. The necessary repairs to enable the bark to prosecute any further voyage could not be obtained at Tampico, and the bark returned to New Orleans, and there the repairs were made. The amount of those repairs, and the incidental expenses of the return to New Orleans as in case of a general average, and the value of the stern boat, were claimed by the plaintiff from the insurance company. The company paid the amount admitted to be due on account of repairs, but contended that it was not liable for the wages, provisions, and other expenses incurred in the return voyage to New Orleans as a general average, (1) because the contemplated destination of the bark was, in the regular course of her projected voyage, intended to be directly back from Tampico to New Orleans; (2) because it could not be treated as a case of general average, since there was no cargo intended to be taken back from Tampico to New Orleans. The company also contended that they were not liable for the loss of the boat, as it was lost in another and a distinct storm, and that the loss would not amount to 5 per cent.

It appeared in evidence that the cargo was shipped at New Orleans, on a voyage "from New Orleans to Tampico, and from thence back to a port of discharge in the United States." The cargo was shipped under a charter party which contemplated the landing of the cargo at another port, Metamoras, at the election of the agent of the ship at Tampico. The master in his deposition swore that the voyage was not intended to be directly back to New Orleans; that, on the contrary, it was his intention, after delivery of the cargo, to employ the bark in that way which should be most for the interest of the owner. At the time he had in contemplation to go to Tabasco for a load of wood to carry to New York, but was prevented from employing her in that way, or any other, by the disaster. He also swore that his return to New Orleans was not in the regular course of the projected voyage, but solely for and from the necessity of the repairs to be made there as the nearest and most convenient port for that purpose. The counsel for the plaintiff contended (1) that under the circumstances the voyage to New Orleans was a voyage of necessity for repairs; that the company were liable to the usual expense of wages, provisions, etc., for that

voyage, as in the nature of general average; (2) that the loss of the boat was solely attributable to the disabled and crippled condition of the bark by the first storm, and her being unable to be kept from rolling in the trough of the sea by the want of any proper sails.

Mr. Justice Story, sitting as Circuit Judge in the case, held, among other things, that the wages, provisions, and other expenses of the voyage to the port of necessity, for the purpose of making repairs, constituted a general average; that it makes no difference, in the application of the principle to policies of insurance, that there happens to be no cargo on board, so that there is, in fact, no contribution to be made by the cargo or by freight; for general average does not depend upon the point whether there are different subject-matters to contribute, but whether there is a common sacrifice for the benefit of all who are or may be interested in the accomplishment of the voyage; nor does it make any difference in the application of the principle that the insurance on which the question arises is not for a particular voyage, but on time.

Appellant contends that there are substantial distinctions between the case cited and that at bar, and also contests its soundness. In so far as the question here involved is concerned, we see no substantial difference between the two cases. Here the parties, in effect, expressly stipulated that the voyage from Wood's Mill, in Gray's Harbor, to San Francisco (which was not, as said for the appellant, the voyage originally contemplated by the parties), was a voyage of necessity to a port of repair. The ship had not reached Hoquiam at the time she was disabled, and never did do so, so far as appears, and, as a necessary consequence, never did take aboard the cargo of lumber she engaged to take. When she became disabled on entering Gray's Harbor, there was, of necessity, but one of two things to be done—obtain repairs, or await eventual destruction. Being without cargo, there was no freight pending, and there were, consequently, but two interests then involved—the interest of the owners, and that of the insurer. That circumstance, however, does not preclude the adjustment occasioned by a voluntary sacrifice being made on general average principles. In that condition, and under those circumstances, the Grace Dollar was, according to the agreed statement of facts, "towed to Hoquiam, where she was filled with lumber in her forward part, so that her stern was brought out of the water high enough to allow of her being beached, and a better jury rudder fitted. She was thereafter beached, a jury rudder was fitted, and she was again towed off, and then taken to Wood's Mill, in Gray's Harbor, where she loaded a full cargo of lumber; the insurers having consented to towage to San Francisco in her disabled condition, provided she should take a cargo of lumber." The lumber taken on board by the disabled ship at the request of the insurer was manifestly for the better security of the vessel while being towed to San Francisco, and consequently for the benefit, in part, at least, of the insurer; the cost of which towage was, in our opinion, of a general average nature, and the payment of which was in the nature of salvage, and for the benefit of the insurer as well as the owners.

Not only are we unable to see any substantial distinction between the present case and that of Potter v. Ocean Insurance Co., but we think

the decision of Justice Story in that case in line with what was said by that eminent judge in delivering the opinion of the Supreme Court in the case of Columbian Insurance Co. v. Ashby, 13 Pet. 329, 10 L. Ed. 186. See, also, Greely v. Tremont Ins. Co., 9 Cush. (Mass.) 415; Steamship Carrisbrook Co. v. London, [1902] 2 K. B. 681; Montgomery v. Indemnity Mut., [1901] 1 K. B. 147, [1902] 734.

It seems to be conceded by both parties to the present controversy that whether an act is general or particular average must depend upon the nature of the sacrifice, and not on whether there is more than one contributory interest.

The judgment is affirmed.