## GULF REFINING CO. v. UNIVERSAL INS. CO.

Circuit Court of Appeals, Second Circuit. Decided May 6, 1929.

No. 278.

Bigham, Englar & Jones, of New York City (D. Roger Englar and M. P. Detels, both of New York City, of counsel), for appellant.

Burlingham, Veeder, Masten & Fearey, of New York City (Van Vechten Veeder, of New York City, of counsel), for appellee.

Before MANTON, SWAN, and AUGUSTUS N. HAND, Circuit Judges.

MANTON, Circuit Judge. A cargo shipped on the vessel Gulf of Venezuela, together with the vessel, sustained a fire loss. The fire was extinguished with foamite and water, but only after considerable damage to both cargo and vessel. The vessel, cargo, and freight were separately insured by the appellee, who owned both cargo and vessel. The insurance covered fire and marine perils, including general average. Various underwriters, domestic and foreign, participated in the insurance, but the underwriters on the vessel were not the same as those of the freight or cargo. A general average statement was prepared by the average adjusters employed by the appellee for the purpose of making allowances and contributions, special charges, and particular average, payable by it or for the account of the vessel, cargo, and freight respectively, or the underwriters thereon, as if belonging to separate owners. These amounts were ascertained, and the amounts payable or receivable by the several underwriters on account of the general and particular average and special charges collected were paid in full, except the collecting of the commissions which is in issue in this suit. The adjusters added to the general and specific charges the collecting commission of 2½ per cent., of which the appellant's share is $268.15. The appellant refused to pay the same, denying liability, for the reason that the assured owned both the vessel and cargo.

■ Because ship and cargo were separately insured, they are as if separately owned, and there was need of a general average adjustment. It treated the interest, ship and cargo as if separately owned, for the underwriters' stood in the place of the owner as to each interest, and received and paid the moneys collected and distributed as if there was diversity of ownership. A general average adjustment involves the apportionment of items as between general average and special charges, the collection of the funds from the different underwriting interests, and the distribution of the same according to the adjustment made. A collection fee charged in the case of diverse ownership of interest is regarded as proper, and the question is whether, in the case of common ownership with diverse underwriting, a collection charge is improper. In the case of common ownership, adjustments differ in no respect for an adjustment properly made as between the several interests of cargo, ship, and freight, is binding on the underwriters. They stand in the place of the assured. When there is common ownership of the several interests, the adjustment is in effect in behalf of the underwriters themselves.

■ It has been the custom, and it is authorized by the law merchant, that a commission of 2½ per cent. be paid for collecting general average. In Barnard v. Adams, 10 How. 270, 13 L. Ed. 417, decided in 1850, the Supreme Court said:

"The 2½ per cent. allowed for collecting the general average rests upon the usage and custom of merchants and average brokers. It is a duty arising out of the unforeseen disaster, and resulting directly from it. Usually there are contributions to be paid out, as well as received, by the shipowner. It is a troublesome duty, not embraced in their obligation as mere carriers. The usage is therefore not unreasonable. The objection, that it is paying the owners for merely collecting their own debt, is founded on the accidents or peculiar circumstances of this case, and does not affect the general principle on which this usage is based."

Five years later, in Sturgis v. Cary, 2 Curt. 382, Fed. Cas. No. 13,573 (1855), Mr. Justice Curtis, sitting at circuit, considered an exception to a master's report which raised the question of whether the owners of a vessel were entitled to charge among the items to be contributed for in general average a commission of 2½ per cent. on the amount of general average loss to be paid to the owners of the vessel and conferred as a compensation for collecting the contributory shares. After referring to Barnard v. Adams, supra, as to the legal usage in Boston not to allow such a charge, and answering the argument that in Barnard v. Adams a commission was allowed because of a local usage in New York, he said:

"I must take it therefore to be settled, by an authority which is binding on this court, that under the general law merchant the shipowner has the right to make this charge, and upon this state of the law, a question, not without difficulty, arises in this case; it is whether the local usage in Boston, not to allow such a charge, can control the rights of these complainants. * * * And where

the usage is so general that the parties must be presumed to have contracted in reference to it, or where it so affected the subject-matter of the contract, that both were reasonably bound to know the usage, their consent to be bound by it and to waive the rule of law is implied in many cases."

And after quoting from Mr. Justice Story (1 Story, Eq. Jur. § 490), speaking of general average, he said:

"It is true, this rule is said by the Supreme Court to rest upon the usage and custom of merchants and average brokers. But the same might be said of a large part of those rules of the commercial law which are as well settled and as constantly administered by the courts, as any statutes enacted by the legislature. It seems to me also, that if, as the Supreme Court declare, it is a duty thrown on the shipowner, by the common disaster, to collect and pay the contributions, a usage not to indemnify him for discharging this troublesome duty, would not be consistent with the principle which requires contribution to be made, and it would be difficult to sustain its reasonableness. * * * But the practice of merchants to make and receive compensation for services by a fixed rate of commission is almost universal, and must be deemed to be, on the whole, just and equal in its general operation, or it would not have thus obtained."

■ Thus for 75 years the custom to make this charge for collection and share it in general average continued; and as Williston on Contracts, § 649, points out:

"Usage derives its efficacy from the assent thereto of parties to the transaction; custom derives its efficacy from its adoption into the law, and when once established is binding, irrespective of any manifestation of assent by parties concerned. Usage is, therefore, of importance only in consensual agreements, since it is the assent of the parties which gives it its force. Custom, on the other hand, may be of importance in any department of the law."

■ It is authoritatively settled that general average depends upon the event of a common sacrifice for the benefit of all who are or may be interested in the voyage—not upon the existence of different contributory subjects. Contribution is a consequence. Neither the absence of a cargo nor the common ownership of vessel and cargo will affect the application of the principle of general average. Potter v. Ocean Ins. Co., 3 Sumn. 27, Fed.

Cas. No. 11,335; La Fonciere Compagnie, etc., v. Dollar, 181 F. 945 (9th C. C. A.); Risley v. Insurance Co. of North America, 189 F. 529 (2d C. C. A.). At bar, collection was made from underwriters as if the vessel and cargo were separately owned. The general average statement determined the debt due from each set of underwriters. Allowances were made to cargo underwriters, to which the vessel underwriters had to contribute, and their allowances were made to the vessel, to which cargo underwriters had to contribute. Both purposes were accomplished by the general average statement, and collections were necessarily made from both sets of underwriters. Each benefited pro rata by the general average sacrifice. Necessarily, the owners were put to the expense of collecting commissions by reason of this general average, and, inasmuch as the underwriters alone benefited from the general average, they should pay the charges incidental thereto.

■ Nor are Greely v. Insurance Co., 9 Cush. (Mass.) 415, and Montgomery v. Insurance Co. [1902] 1 K. B. 734, contrary authorities. These cases recognize the rule that, where there is common ownership of ship and cargo, the underwriter on any one of the interests may receive credit from any contribution due from the other interests. The general rule is that a general average sacrifice or expense by an interest can be recovered in full from the underwriters on such interest as a partial loss permitting the underwriters to collect by subrogation in general average any contribution due from the other interests. But in the case of common ownership of interests this cannot be done, because there can be no subrogation of the claim of the insured against himself. There must first be a general average adjustment in such cases, and the claim against the underwriter is for the general average. Thus appellee recovered below merely the general average expense; that is, the collection charged in the adjustment.

■ A commission is allowed on the special charges of $4,265.07, which amounts to $106.63. This item should be excluded, because it is on a special charge. General average may not be charged against the special interest for whose benefit this charge was incurred. The decree will be modified, by deducting therefrom the appellant's share it is obliged to contribute to the general average as to the $106.63.

As thus modified, the decree is affirmed.