## THE EMILIA S. DE PEREZ.

District Court, D. Maryland. September 24, 1927.

No. 1483.

**1. Shipping ⬦193—Master's acts in pouring water into ship, extinguishing fire and damaging some of cargo, after ship arrived at destination and while cargo was on board, were "general average" acts, and steamship and owner and cargo became liable to contribute to general average.**

Where, after steamship arrived at destination and while cargo was still on board, fire broke out and master caused water to be poured into it, which damaged some of cargo, but resulted in extinguishing fire and saving ship and rest of cargo, such acts were within definition of general average acts, and steamship and owner and cargo became liable to contribute to general average for value of cargo damaged or destroyed; "general average" being a contribution by several interests engaged in maritime adventure to make good loss arising from voluntary sacrifices of part of cargo or ship, in order to save residue of property or lives of those on board from an impending peril, or for extraordinary expenses necessarily incurred for common benefit and safety of all interests in adventure.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, General Average.]

**2. Shipping ⬦199—Duty rests on master, as representative of shipowners, to make general average adjustments.**

Duty rests on master, as representative of shipowners, to make general average adjustments, even though custom has grown up of engaging adjusters for convenience' sake.

**3. Shipping ⬦195—Cargo owner has right in personam against shipowner for his full share of general average statement.**

Owner of cargo, which has been partly destroyed in extinguishing fire on ship, has right in personam against owner of ship for his full share of general average statement.

**4. Shipping ⬦195—Vessel is liable in rem for its portion of general average loss.**

Vessel is liable in rem for its portion of general average loss, but no more, under principle that vessel is bound to cargo, and cargo is bound to vessel.

**5. Shipping ⬦195—Lien exists .on cargo, freight, and vessel for general average contribution.**

A lien exists on the cargo, freight, and vessel for general average contribution.

**6. Admiralty ⬦1—Jurisdiction of admiralty courts is not limited to claims which have been liquidated or agreed on.**

While courts of admiralty will not attempt to adjust complicated accounts, they will make some computations, and their jurisdiction is not limited to claims which have been liquidated or agreed on.

**7. Shipping ⬦200—Cargo owner could recover in admiralty from ship and shipowner amount due him under general average adjustment, deposits having been collected by shipowner.**

Where libel against ship and shipowner alleged that deposits under general average adjustment for damage to libelant's cargo caused by pouring water into ship to extinguish fire were collected by shipowner, and that certain amount was due under such adjustment, and that shipowner had not paid same, admiralty court had jurisdiction, since obligation did not become one for money had and received only, and lose its maritime nature.

In Admiralty. Libel by Julius Blum against the steamship Emilia S. De Perez and Angel F. De Perez. Respondent excepts to the libel. Exceptions overruled.

George Forbes, of Baltimore, Md., and Bigham, Englar & Jones, of New York City, for libelant.

Janney, Ober, Slingluff & Williams, of Baltimore, Md., for respondent.

COLEMAN, District Judge. The present suit is one of several proceedings in admiralty brought by owners of cargo in the steamship Emilia S. De Perez, in which the libelants seek to compel the owner of the vessel to conclude a general average adjustment by libel in rem against the vessel, and in personam against her owner. The libel in this particular case alleges that the Emilia S. De Perez was engaged as a common carrier in 1919 by the libelant to carry from New York to Barcelona, Spain, certain shipments of wire rolls; that after the steamship arrived at Barcelona, and while the cargo was still on board, a fire broke out, thereby exposing the ship and cargo to a common peril; that as a result the master caused water to be poured into the ship, which damaged some of the cargo, but which resulted in extinguishing the fire and saving the ship and the rest of the cargo.

[1] These acts of the master are clearly within the definition of general average acts, and there is no dispute as to this in the present case. General average is defined as a contribution by several interests engaged in a maritime adventure to make good the loss arising from voluntary sacrifices of part of the ship or cargo, in order to save the residue of the property or the lives of those on board from an impending peril, or for extraordinary expenses necessarily incurred for the common benefit and safety of all the interests

in the adventure. See Ralli v. Troop, 157 U. S. 386, 15 S. Ct. 657, 39 L. Ed. 742. Therefore the steamship and her owner, Angel F. De Perez, and the cargo on board at the time, became liable to contribute to general average for the value of the cargo damaged or destroyed as a result of the various acts done to extinguish the fire. Accordingly the owner claimed, and received, from the consignees of all the merchandise discharged from the steamship, cash general average deposits of a certain percentage of the value of such merchandise, sufficient to cover any contribution due from the merchandise in general average. Thereafter a general average adjustment was stated at Barcelona, Spain, under the owner's direction and in accordance with the Spanish customs and law, which statement, upon completion, showed that there was due to libelant the sum of $11,712.97, none of which has been paid, although, as is claimed, long overdue.

Respondent has excepted to the libel on three grounds: First, that the facts averred are insufficient to constitute a cause of action; second, that they do not constitute a cause of action within the admiralty and maritime jurisdiction of this court; and, third, that they do not constitute a cause of action of which this court, under the rules and principles of comity, will take jurisdiction. We need concern ourselves with the first two exceptions only, because the third was in effect withdrawn at the hearing for lack of merit, in which the court concurs.

Summarized, the contention which respondent seeks to make by the exceptions is, first, assuming some liability to exist, it is that of the adjusters under the general average, and not of the vessel or the owner; and, second, at most, this is a case in which the libelant is suing for money had and received by the owner, and therefore not subject to admiralty jurisdiction.

[2, 3] Taking up the first point, which is raised by the first exception, namely, that the liability, if any, rests upon the adjusters, the court finds no warrant for this contention. From the very origin of general average, it appears to have been the duty of the master, as representative of the shipowners, to make general average adjustments. The master has universally and consistently been looked upon as the responsible party. Ralli v. Troop, 157 U. S. 386, 400, 15 S. Ct. 657, 39 L. Ed. 742. The custom has, to be sure, grown up of engaging adjusters for convenience sake, who can familiarize themselves with and work out the rather difficult problems of accounting that are involved in many of these cases. But there is no custom which substitutes, in the eyes of the law, the adjuster for the master. As has been pointed out, it would be wholly impracticable for each cargo owner to sue every other cargo owner separately and to try to make up an adjustment piecemeal. Some one must act as trustee, with the responsibility of perfecting the adjustment, and it has been consistently held that this duty rests upon the master (representing the owner) of the ship. The libel itself alleges that the deposits were collected by the owner. Adjusters are not mentioned in the libel. See Gillett v. Ellis, 11 Ill. 579; United States v. Wilder, 28 Fed. Cas. No. 16694; Heye v. North German Lloyd (D. C.) 33 F. 60, 2 L. R. A. 287; The Eugenia J. Diacakis, 22 F.(2d) 461, 1923 A. M. C. 305.

The responsibility of the owner is so well established that neither analysis of the language of these cases, nor a citation of additional authorities, would seem to be necessary. That is to say, the libelant has a right in personam against the owner for his full share of the general average statement. Whether the owner may be exempt from such accounting on the ground, as has been intimated, that the general average deposits have been lost through the failure of a Spanish bank, without negligence on his part, is not a matter for consideration on the present state of the pleadings.

[4] In addition, the libelant seeks to assert a lien upon the vessel for his full share of the general average statement. A general average lien on the cargo accrues to the shipowner through his agent, the master, and, since it is dependent upon possession, the owner is necessarily the only one who can have such a lien upon the cargo. The ship must also contribute, however. It therefore follows, from the very nature of general average, and from the principle that "the vessel is bound to the cargo and the cargo bound to the vessel," that the vessel must be liable in rem for its portion of the general average loss. The Allianca (D. C.) 64 F. 871, affirmed (C. C. A.) 79 F. 989; Du Pont de Nemours v. Vance, 19 How. 162, 168, 15 L. Ed. 584. A cargo owner, then, may hold the vessel in rem for the full share of her contribution, but no more. This is not varied by the fact that there may be several cargoes involved. So, if any one or more cargo owners' liens, when asserted against the vessel for the latter's share, completely exhaust such share, the vessel cannot be further liable. Other cargo owners must pursue each other, or their bonds, as the case may require.

[5] Turning to the second exception, namely, that the facts averred in the libel do not constitute a cause of action in admiralty, the court is of opinion that this contention is not well founded. There is no room for doubt that a lien exists upon the cargo, freight, and vessel for general average contribution, a principle which in fact is not disputed by respondent. Du Pont de Nemours v. Vance, 19 How. 162, 15 L. Ed. 584; The Eugenia J. Diacakis, 22 F.(2d) 461, 1923 A. M. C. 305. But respondent argues that this is a suit for money had and received, or, in other words, that, while the obligation to contribute in general average is admittedly a maritime obligation, nevertheless, after the contribution is once made, and the matter is resolved into a question of accounting for the trust fund, and paying it out to those entitled to it, the obligation becomes one for money had and received, and has lost entirely its maritime nature. In support of this theory, respondent cites the example of a policy of marine insurance which is admittedly a maritime contract, yet a suit to recover back money paid upon it, on the ground of misrepresentation, will not be entertained in the admiralty courts. Home Insurance Co. v. Merchants' Transportation Co. (C. C. A.) 16 F.(2d) 372. Similar examples are cited, involving contracts for sale of water-borne cargo; also bonds involving marine contracts, and claims for overpayment for stevedoring services.

While it may not always be easy to classify those cases which are, and those which are not, properly within the maritime jurisdiction, and while, furthermore, some language in the earlier cases may tend to confusion, the great weight of authority appears to the court to be decidedly against respondent's contention. For example, in Bark San Fernando v. Jackson (C. C.) 12 F. 341, it was held, as early as 1882, that an action upon a general average bond was a matter of admiralty jurisdiction. To decide in favor of respondent's contention would be to take a long step backward to Cutler v. Rae, 7 How. 729, 12 L. Ed. 890, wherein it was held that the implied obligation to pay general average dues is without the scope of maritime jurisdiction. But this case was impliedly, if not expressly, overruled by the Supreme Court in Insurance Co. v. Dunham, 11 Wall. 1, 20 L. Ed. 90. See, also, National Board

of Underwriters v. Melchers (D. C.) 45 F. 643, where jurisdiction was maintained of a libel in personam to recover a proportion of general average expenses.

[6, 7] The case of Minturn v. Maynard, 17 How. 477, 15 L. Ed. 235, cited by respondent as being a general average case, is not such. Also the case of Colton v. New York & Cuba Mail S. S. Co. (D. C.) 17 F.(2d) 208, relied upon by respondent, is not apposite on the facts. There the steamship owner had mingled the deposits with his own general funds, and the cargo owners were trying to enforce a lien upon these deposits collected by the steamship company, but were met with the difficulty that the deposits no longer existed in specie, and the court held that their only remedy was in personam against the steamship company. In this connection it is important to note that the amount claimed as due under the libel in the present case is liquidated and specifically stated. As a matter of fact, while the courts of admiralty will not attempt to adjust complicated accounts, they will make some computations. Their jurisdiction is not limited to claims which have been liquidated or agreed upon. The I. S. E. 2 (C. C. A.) 15 F.(2d) 749. A fortiori, the present claim should be entertained.

The question here presented seems to be set at rest by the very recent case of Compagnie Française de Navigation à Vapeur v. Bonnasse et al., 19 F.(2d) 777, a decision of the Circuit Court of Appeals for the Second Circuit, rendered in May of this year, by Circuit Judge Learned Hand. There it was held that a bond, procured by an owner of a ship and delivered to a charterer to cover the ship's liability on general average losses, was a maritime obligation, within the jurisdiction of the admiralty court. This case goes even further in assuming jurisdiction than the libelant in the present case would have us go, because, after the damage constituting a general average loss, and after the owner had procured a general average bond from one bank in favor of the charterer, another bank took over the assets of the first bank and assumed payment of all its banking liabilities. On this state of facts, the court held that the liability of the second bank on the bond was a maritime obligation, and assumed jurisdiction.

The exceptions are therefore overruled.