ROBERT L. REDFIELD and LUKE VINCENT LOCKWOOD, as Surviving Trustees under the Last Will and Testament of MONTGOMERY B. COWPERTHWAIT, Deceased, WALTER CRITCHLEY, LUKE VINCENT LOCKWOOD and DUNCAN GILBERT HARRIS, as Executors, etc., of HERBERT M. COWPERTHWAIT, a Deceased Trustee under the Last Will and Testament of MONTGOMERY B. COWPERTHWAIT, Deceased, Appellants, Respondents, *v.* WALTER CRITCHLEY, LUKE VINCENT LOCKWOOD and DUNCAN GILBERT HARRIS, as Executors, etc., of HERBERT M. COWPERTHWAIT, Deceased, MORGAN COWPERTHWAIT, ROBERT L. REDFIELD and LUKE VINCENT LOCKWOOD, as Surviving Executors, etc., of MONTGOMERY B. COWPERTHWAIT, Deceased, MONTGOMERY C. EILBECK, as Executor, etc., of MABEL C. EILBECK, Deceased, and NATALIE V. COWPERTHWAIT and LUKE VINCENT LOCKWOOD, as Executors, etc., of MORGAN COWPERTHWAIT, Deceased, Appellants, Respondents, Impleaded with LOUISE COWPERTHWAIT LAWRENCE, Respondent, Appellant.

First Department, December 3, 1937.

*Philip W. Lowry* of counsel [*Hill, Lockwood & Redfield,* attorneys], for the plaintiffs and the defendants other than Louise Cowperthwait Lawrence.

*John L. Wells,* for the defendant Louise Cowperthwait Lawrence.

MARTIN, P. J. The defendant Louise Cowperthwait Lawrence will be referred to herein as the respondent, and the other parties as the appellants.

By the terms of the will of her father, which has been duly admitted to probate in the Surrogate's Court, Westchester county, the respondent Louise Cowperthwait Lawrence became entitled to receive the income from a trust fund to the extent of $2,500 a year during the term of her natural life. In May and November of each year, beginning November, 1915, and ending May, 1928, the respondent received from the trustees checks for a semi-annual installment of income. For reasons best known to her, she never cashed any of these checks. No accounting has been had in the Surrogate's Court, Westchester county.

In June, 1928, the trustees commenced this action. The complaint prayed for judgment " declaring whether or not the defendant Louise Cowperthwait Lawrence has renounced the said benefits provided for her in the said last Will and Testament of the said Montgomery B. Cowperthwait, and further pray that if the said judgment declare that the said defendant Louise Cowperthwait Lawrence has not renounced such benefits, that the said Louise Cowperthwait Lawrence be directed to present such checks for payment, and that if the said judgment declare that the said defendant Louise Cowperthwait Lawrence has renounced such benefits that the said Louise Cowperthwait Lawrence, her personal representatives and assigns, be enjoined and restrained from collecting, cashing, depositing or in any manner negotiating any of the said checks which have been delivered to her as hereinbefore alleged, and that she be further directed to return and surrender such checks to the plaintiffs for cancellation, and plaintiffs further pray judgment that the accounts of the plaintiffs Morgan Cowperthwait, Robert L. Redfield and Luke Vincent Lockwood and the said Herbert M. Cowperthwait, as executors of and trustees under

the said last will and testament of Montgomery B. Cowperthwait, deceased, as set forth in Exhibit B hereto annexed, be taken and judicially settled and stated by this court, and that the plaintiffs be granted such other and further relief as may be just and equitable together with the costs and disbursements of such accounting."

An order of publication was obtained and the summons and complaint were served upon respondent personally in New Jersey. Neither she nor any of the other defendants appeared in the action. Upon the report of a referee appointed therein judgment was entered declaring that, as matter of fact and of law, respondent had waived and renounced all of the benefits provided for her in the will of her father and by reason of such renunciation the trust created and erected pursuant to the provisions of the will had terminated by operation of law, and the plaintiffs were directed to distribute the principal and accumulated income to those who would be entitled to it upon the death of the respondent. This judgment was entered on November 12, 1928. Neither the judgment nor any notice of entry thereof was ever served on the respondent. The trustees forthwith paid over all accumulated income as well as principal as authorized by the judgment. Subsequently, this court (two justices dissenting), on respondent's application, vacated the judgment in accordance with the provisions of section 108 of the Civil Practice Act. (*Cowperthwait* v. *Critchley*, 243 App. Div. 70.) In passing, we wish to state that the views then expressed are now adhered to.

The respondent thereupon answered and, after a full presentation of the evidence upon the issues, judgment has been rendered in her favor against the trustees for the sum of $66,122.48 with personal judgments totaling the same amount against the recipients of the fund distributed by the plaintiffs in accordance with the November, 1928, judgment. The present judgment also provides for the recovery by the trustees of the principal of the fund, with a direction to hold the same and pay $1,250 semi-annually to the respondent as long as she be living.

We are of opinion that the judgment in favor of respondent is just and equitable and must be affirmed.

The trial court has made findings of fact that during the period 1915 to 1931 the respondent had other cash resources and did not need to cash the checks sent to her; that she regarded the checks as absolutely safe, as safe as a savings bank deposit, and, therefore, retained the same; that she never intended to waive or renounce her rights to receive the income under her father's will and never intended that the accumulated interest should be paid to any one other than herself. Respondent's testimony

supports such findings. On the other hand, the appellants claim she did not act because, as they set forth in their brief, " she had no intention of accepting her father's bounty, both because she was given, perhaps, a pittance compared to the legacies of her brothers, sister and niece from an estate of a million and a quarter dollars, and because throughout the entire period a most bitter litigation was being conducted by her husband against her father, and, after his death, against his estate, for an accounting of the business of The Cowperthwait Company [in which the respondent's husband and her father had been partners]. This litigation, begun in 1904, terminated in January, 1934, by the dismissal by the Supreme Court, New York county, of Lawrence's complaint (reported in 150 Misc. Rep. 326). The coincidence of the termination of this protracted litigation involving her husband, in January, 1934, with Mrs. Lawrence's notice of motion, in May, 1934, points the ' reason ' why she did not cash the trustees' checks * * *. In other words, during the entire period, November, 1915, to January, 1934, her intention was never to accept income under her father's will, but only to partake of the profits of The Cowperthwait Company business to be acquired through a judgment in her husband's accounting suit; she changed her mind only when that accounting suit terminated adversely to her husband."

Whatever respondent's motive may have been in not cashing the checks, she did not thereby waive her right under her father's will. She took no action whatever. " Waiver " is usually defined as the intentional abandonment or relinquishment of a known right. ( Newburger v. Lubell, 257 N. Y. 383; S. & E. Motor Hire Corp. v. N. Y. Indemnity Co., 255 id. 69. See, also, Words & Phrases [Fourth Series].) There is no evidence of any expressed intention to waive. If any waiver could be found it would have to be constructive or implied from the conduct of the respondent, in which situation the elements of estoppel are introduced. Here, however, there is no evidence upon which a claim of estoppel may be based. No one interested did anything based on the failure of the respondent to cash the checks. The bank in which the trustees carried their account did nothing; its regular statements to the trustees showed the balance undiminished by any debit due to the cashing of the checks, and a representative of the bank testified before the referee that the bank could not know if any checks had been drawn to the respondent's order. The ultimate recipients of the fund did nothing. They knew the respondent was still living and knew that, under the terms of the will of respondent's father, she was entitled to the $2,500 per annum as long as she lived. Seemingly they were indifferent, for they defaulted

in this action. The trustees did nothing. There was nothing involved about the trust; the account was simple, and the uncashed checks created no difficulty in rendering an account.

So devoid is this record of any evidence upon which either waiver or estoppel could be based that we are at a loss to understand why the trustees took it upon themselves to endeavor to have this respondent deprived of what they describe as " a pittance," which respondent's father, in his " bounty," left to her. While it may be rather unusual for any one to fail to make use of an income such as is here involved, still it was respondent's for life to do with as she saw fit. It had not been given to her conditioned upon her relieving the trustees of the burden of carrying it on their books. She was at liberty to take it or leave it, and if the trustees found the trust burdensome, substitutes could readily have been appointed.

Perhaps the solution is found in the relation of the trustees to the other parties interested. The surviving trustees of the will are plaintiffs Robert L. Redfield and Luke Vincent Lockwood. Mr. Lockwood is one of the executors of the estate of Herbert M. Cowperthwait, deceased, which estate received $19,615.70 under the November 12, 1928, judgment. The law firm of which the trustees are members acted as attorneys, not only for the trustees but also for the estates of Mabel C. Eilbeck and Morgan Cowperthwait. In their lifetimes those two individuals received $54,923.96 and $19,615.70, respectively, under the 1928 judgment. The testimony of the trustee Redfield before the referee indicates that his firm was also attorney for respondent's father during his lifetime. Apparently, they were the attorneys for all the family, except the respondent.

Considering all the circumstances and in view of the knowledge which the trustees had of the family history and the feeling existing between the respondent and the other members of the family, it is a reasonable inference that this litigation was instituted solely for the benefit of the remaindermen.

In the Restatement of the Law of Trusts, section 183 covers the duty of trustees to deal impartially with beneficiaries, and it is there stated: " When there are two or more beneficiaries of a trust, the trustee is under a duty to deal impartially with them." And section 232 covers the question of impartiality between successive beneficiaries, and the rule is laid down, " If a trust is created for beneficiaries in succession, the trustee is under a duty to the successive beneficiaries to act with due regard to their respective interests."

The action of the trustees in taking the initiative in this litigation and their conduct throughout cannot be considered to be consistent with the obligation of impartiality which their office imposed upon them.

The trustees say their position had become intolerable on account of respondent's attitude, and for them to continue to send checks to respondent, giving no one, except the bank, the benefit of the use of the money, both principal and interest, might have later subjected them to a charge of waste. Checks for the income were being sent to the respondent, the principal was intact, the bank was paying interest on the balance, and resignation would have relieved the trustees of their " intolerable " position.

It is urged that the position of the trustees changed completely when they distributed all of the funds constituting the corpus of the trust, terminating the same pursuant to the directions contained in the judgment of November 12, 1928, and, because of that, respondent is completely estopped now to deny her renunciation. We have held that the judgment referred to must be vacated. We find no evidence of hardship upon any one to restore the parties to the positions held prior to that judgment. The trustees, even now, do not propose resignation.

We will now consider the respondent's appeal and her claim that the judgment should be increased by the sum of $9,247.70 additional interest. In accordance with the stipulations entered into by the parties, the amount of interest allowed is the amount actually received by the recipients of the fund. The respondent has addressed her application for relief to the equity side of the court and it would be inequitable to compel the appellants to pay interest when, as stipulated, they received no interest.

The judgment appealed from should be affirmed, without costs.

TOWNLEY, DORE and COHN, JJ., concur; O'MALLEY, J., dissents.

O'MALLEY, J. (dissenting). The court always has had inherent power in the interest of justice to vacate a judgment. (*Ladd* v. *Stevenson*, 112 N. Y. 325.) Sections 108 and 528 of the Civil Practice Act, therefore, were intended to place a limit upon the time within which a default judgment should be vacated. (*Schlimmer* v. *New York, Ontario & Western R. R. Co.*, 212 App. Div. 782.)

Here, there are no intervening or other equities, such as were found in *Ladd* v. *Stevenson* (*supra*). The protection of sections 108 and 528 of the Civil Practice Act, therefore, should be afforded the parties obtaining the default judgment and the inherent power of the court should not be invoked against them. (*Gysin* v. *Gysin*,

263 N. Y. 509.) Whether there was power in the court, as distinguished from exercise of discretion, to open the default judgment may properly be presented to the Court of Appeals by appeal from the final judgment. (Civ. Prac. Act, §§ 562–580.)

I, therefore, dissent and vote for reversal of the judgment in favor of the defendant Louise Cowperthwait Lawrence and for reinstatement of the default judgment against her entered November 12, 1928, in accordance with my dissent from the order of this court vacating said default judgment. (243 App. Div. 70.)

Judgment affirmed, without costs.