### (March 19, 1970)

■ McGraw-Edison Company, Appellant-Respondent, v. Trinidad Corp., Respondent-Appellant.— Judgment entered January 15, 1969, affirmed, with $50 costs and disbursements to defendant-respondent-appellant. Trial Term, after a complete and adequate trial, awarded judgment to the defendant on its counter-claim. No error other that the conclusion reached is asserted. The issue presented was what caused the breakdown of the engines of defendant's ship, the S.S. *Austin.* After hearing the testimony the trial court concluded that the failure was rightfully to be attributed to plaintiff's failure to make the indicated repair to a pole piece. Even though this was a relatively minor item in the work done on a supplementary contract there was ample evidence, both factual and opinion, that this was the source of the damage. We are unable to say that the conclusions drawn were against the weight of the evidence. The dissent merely emphasizes the facts from which an opposite conclusion could have been drawn. Concur — Stevens, P. J., Markewich and Steuer, JJ.; McGivern, J., dissents in the following memorandum: In my view, the majority disposition stretches the doctrine of proximate cause to the breaking point. The S.S. *Austin* was an over-age tanker when it put into the Bethlehem drydock in Baltimore in August of 1963 for a general overhaul. The plaintiff McGraw-Edison entered the scene only for the limited purpose of uprating the horsepower of the main propulsion engine. That is all. Five weeks later, in October, heavily laden with cargo, the S.S. *Austin* broke down in the Gulf of Mexico. A ground relay had tripped, which never before had happened in the long history of this vessel. As for the cause, the trial court candidly found the evidence hypothetical and confusing. A joint inspection and inquiry found the "causes unknown and undetermined." I can as readily attribute the cause to negligent maintenance by the shipowners, or the failure of the ship's engineer to adhere to the Elliott manual. To me it is the sheerest speculation to find the October breakdown was caused by the failure of McGraw-Edison to "inspect"— in connection with the performance of some collateral repair work, the total cost of which was $69.15. For be it remembered, the main McGraw-Edison contract to uprate the engine is not at issue here. Only what is called "a supplementary oral contract", the upshot of which was the involvement of five pole pieces. On this slender reed the majority rests a judgment in favor of the defendants, which together with interest, is well over $100,000, and justifies Trinidad's refusal to pay the plaintiff a repair invoice of nearly $80,000 for services requested by Trinidad. As to these latter services, it is not even intimated these services were not adequately performed or that the price is other than reasonable. Permitting these judgments of such large consequences to stand on a shadowy finding of "failure to inspect", bottomed upon an alleged but unproven contractual duty, is invoking "too harsh a rule of conduct". (*Morrison* v. *New York Tel. Co.,* 277 N. Y. 444, 451.) I would reverse and award judgment to the plaintiff.