571 F.2d 131
 MASTER SHIPPING AGENCY, INC., et al., Plaintiffs,
v.
M. S. FARIDA, her engines, boilers, etc. and Norton Line,
Defendants, Third-Party Plaintiffs.
STOCKHOLMS REDERI-AKTIELBOLAG SVEA, Defendant, Third-Party
Plaintiff-Appellee,
v.
COURT CARPENTRY & MARINE CONTRACTORS CO., and International
Terminal Operating Co., Defendants, Third-Party
Defendants-Appellants and Appellees.
 Nos. 368 and 402, Dockets 77-7392 and 77-7399.
 United States Court of Appeals,
Second Circuit.
 Argued Nov. 22, 1977.
Decided Feb. 28, 1978.
 
 M. E. DeOrchis, New York City (Chester D. Hooper, Haight, Gardner, Poor & Havens, and Alexander E. Rugani, Kirlin Campbell & Keating, New York City, of counsel), for defendant, third-party plaintiff-appellee, Stockholms Rederi-Aktielbolag Svea.
 Robert H. Peterson, New York City (Eli Ellis, Peter J. McHugh, Hill, Betts & Nash, New York City, of counsel), for defendant, third-party defendant-appellant and appellee International Terminal Operating Co., Inc.
 William Warner, New York City (Symmers, Fish & Warner, New York City, of counsel), for defendant, third-party defendant-appellant and appellee, Court Carpentry & Marine Contractors Co., Inc.
 Before LUMBARD, WATERMAN and VAN GRAAFEILAND, Circuit Judges.
 VAN GRAAFEILAND, Circuit Judge:
 
 
 1
 On February 19, 1969, the M. S. Farida sailed from New York for ports in South America with a cargo which included four heavy tractors. On February 21, the vessel's crew was forced to abandon ship because one of the tractors, weighing about 14.4 tons, had broken loose and punctured a large hole in the ship's hull below the water line. The crew did not learn what had brought the vessel to the verge of sinking until after it had been towed to Norfolk, Virginia and placed in dry dock.
 
 
 2
 These are appeals from judgments awarding damages jointly and severally against International Terminal Operating Co., Inc., the stevedore which loaded the vessel, and Court Carpentry & Marine Contractors Co., Inc., the marine lasher which secured the tractors in place in the Number 2 lower hold. In a consolidated action tried in the Southern District of New York, both the ship and appellants were found liable on cargo's claims for damage, and judgment over was directed against appellants on the ship's cross-claim for indemnification of its liability to cargo and for its own losses.
 
 
 3
 The liability issues were tried before Judge Bonsal and his factual findings should not be set aside unless clearly erroneous. S. S. Amazonia v. New Jersey Export Marine Carpenters, Inc., 564 F.2d 5, 8 (2d Cir. 1977); Union Carbide & Carbon Corp. v. United States, 200 F.2d 908, 910 (2d Cir. 1953).[1] The district judge's conclusions as to fault are subject to more searching review. See, e. g., Mamiye Bros. v. Barber Steamship Lines, Inc., 360 F.2d 774, 776-78 (2d Cir.), cert. denied, 385 U.S. 835, 87 S.Ct. 80, 17 L.Ed.2d 70 (1966). However, where, as here, his conclusions were reached by application of the appropriate legal standards to the facts as found, there is no reason to disturb them. Cleary v. United States Lines Co., 411 F.2d 1009, 1010 (2d Cir. 1969); Castro v. Moore-McCormack Lines, Inc., 325 F.2d 72, 75-76 (2d Cir. 1963).
 
 
 4
 A detailed review of the evidence is unnecessary. Court Carpentry was held at fault because it lashed the fourteen ton tractor to the floor while it was sitting on its flexible rubber tires. The proper practice, according to the ship's experts, would have been to support the tractor on rigid wooden blocks placed under its axles. The district court found, as an additional causative factor, that the wooden bracing around the tractor was inadequate and insecurely fastened in place.
 
 
 5
 Expert testimony also established that periodic inspections of the stowed tractors were required so that wire lashings, stretched or loosened by the pitching of the ship, could be tightened as needed. International was held at fault because it stowed cargo in front of an entranceway into the Number 2 hold, thus preventing entry into the hold by the ship's crew while the ship was at sea. The district court found that, had the ship's chief officer been able to enter the Number 2 hold when he attempted to do so on February 20, prompt remedial action could have been taken to avert the catastrophe or reduce the loss, "even if it meant heading for port."
 
 
 6
 The district court concluded that the foregoing defects in stowage made the Farida unseaworthy and that the ship failed to carry its burden of proving that its own fault or neglect did not contribute to the loss. See46 U.S.C. § 1304(2)(q); Nichimen Co. v. M. V. Farland, 462 F.2d 319, 329-30 (2d Cir. 1972). For this reason, the ship was held liable to cargo. However, this did not prevent the ship from recovering over against the stevedore and lasher for breach of their implied warranties of workmanlike performance. "The shipowner's own conduct will preclude it from obtaining indemnity from the stevedore only where it prevented or seriously handicapped the stevedore in his effort to perform his duties." Henry v. A/S Ocean, 512 F.2d 401, 407 (2d Cir. 1975). The district court found that no conduct of this nature took place, and this finding is supported by the evidence.
 
 
 7
 The district judge held appellants jointly and severally liable because he felt that an apportionment of damages as between them "would be speculative at best." We construe this holding as an equal division of damages, United States v. Reliable Transfer Co., Inc., 421 U.S. 397, 407, 411, 95 S.Ct. 1708, 44 L.Ed.2d 251 (1975)[2] for the payment of which appellants are jointly and severally liable and for which a right of contribution exists. See Cooper Stevedoring Co. v. Fritz Kopke, Inc., 417 U.S. 106, 111, 94 S.Ct. 2174, 40 L.Ed.2d 694 (1974); The Alabama, 92 U.S. 695, 697-98, 23 L.Ed. 763 (1875); The Gulf Stream, 64 F. 809, 810-11 (2d Cir. 1894). In Getty Oil Co. (Eastern Operations) Inc. v. SS Ponce DeLeon,555 F.2d 328, 333-35 (2d Cir. 1977), we held that apportionment of damages is a factual determination which will not be disturbed on appeal unless clearly erroneous. The trial judge's determination that he was unable to make an apportionment should be treated in the same manner. Cf. The Max Morris, 137 U.S. 1, 15, 11 S.Ct. 29, 33, 34 L.Ed. 586 (1890). Because we have no firm conviction that damages should have been apportioned herein, we will not disturb the district court's holding.
 
 
 8
 Following his decision on liability, Judge Bonsal appointed a Special Master to hear and report concerning the elements and amount of damages. The findings of the Special Master which were adopted by the district court may not be set aside unless clearly erroneous.[3] Fed.R.Civ.P. 52(a); Skibs A/S Dalfonn v. S/T Alabama, 373 F.2d 101, 106 (2d Cir. 1967). Although appellants attack a number of these findings, most of their objections are without merit. The findings concerning maintenance expenses were factual in nature and are not clearly erroneous. Appellee's proof of lost profits resulting from the unexpected interruption of the Farida's voyage, supported by evidence of the profits of a sister ship on the same run, was sufficiently certain to support the award for this loss. Moore-McCormack Lines v. The Esso Camden, 244 F.2d 198, 201 (2d Cir.), cert. denied, 355 U.S. 822, 78 S.Ct. 29, 2 L.Ed.2d 37 (1957); The Gylfe v. The Trujillo, 209 F.2d 386, 388-90 (2d Cir. 1954); see also Skou v. United States, 478 F.2d 343, 345-47 (5th Cir. 1973); Continental Oil Co. v. SS Electra, 431 F.2d 391, 392-93 (5th Cir. 1970), cert. denied, 401 U.S. 937, 91 S.Ct. 925, 28 L.Ed.2d 216 (1971).
 
 
 9
 Upon the Farida's arrival at Norfolk, her master declared general average, a procedure by which ship and cargo share ratably the overall loss resulting from efforts to extricate the ship and its cargo from a danger common to both.[4] When general average is declared it is the responsibility of the ship to see that cargo interests contribute to the general average fund or furnish security for such contribution. Dibrell Bros. Inc. v. Prince Line Ltd., 58 F.2d 959 (2d Cir. 1932); Cia. Atlantica Pacifica, S. A. v. Humble Oil & Refining Co., 274 F.Supp. 884, 891 (D.Md.1967); American Tobacco Co. v. Goulandris, 173 F.Supp. 140, 182 (S.D.N.Y.1959), aff'd in part, 281 F.2d 179 (2d Cir. 1960), modified in part sub nom. Lekas & Drivas, Inc. v. Goulandris, 306 F.2d 426 (2d Cir. 1962).
 
 
 10
 It is then the duty of the ship's master to make the general average adjustments. Johnson & Higgins v. United States, 287 U.S. 459, 462, 53 S.Ct. 209, 77 L.Ed. 426 (1932); Ralli v. Troop, 157 U.S. 386, 400, 15 S.Ct. 657, 39 L.Ed. 742 (1895); The Emilia S. De Perez, 22 F.2d 585, 586 (D.Md.1927). Although the master himself may make the necessary computations, United States v. Atlantic Mutual Insurance Co., 298 U.S. 483, 491-92, 56 S.Ct. 889, 80 L.Ed. 1296 (1936), they are usually so complex that he hires a professional general average adjuster. Cia. Atlantica Pacifica, S. A. v. Humble Oil & Refining Co., supra, 274 F.Supp. at 892. The master of the Farida hired a firm of professional adjusters, and the cost of the adjustment, which was in excess of $101,600.63, has been charged against appellants. Previous decisions in this Circuit and elsewhere have established the shipowner's right to recover for this expenditure. See Moore-McCormack Lines v. The Esso Camden, supra, 244 F.2d at 202; Gray's Harbor Tugboat Co. v. Petersen, 250 F. 956, 959 (9th Cir. 1918); Erie & Western Transportation Co. v. City of Chicago, 178 F. 42, 51 (7th Cir.), cert. denied, 216 U.S. 620, 30 S.Ct. 574, 54 L.Ed. 641 (1910); The Energia, 66 F. 604, 608 (2d Cir. 1895); Compania Punta Alta, S. A. v. Dalzell, 162 F.Supp. 926, 930 (S.D.N.Y.1958).
 
 
 11
 Appellants contend, however, that when the owners of the Farida discovered the cause of her mishap, they should have realized that they would be unable to recover in general average because they had failed to exercise reasonable diligence to provide a seaworthy ship. See Orient Mid-East Lines, Inc. v. A Shipment of Rice, 496 F.2d 1032, 1037-41 (5th Cir. 1974), cert. denied, 420 U.S. 1005, 95 S.Ct. 1447, 43 L.Ed.2d 763 (1975). For this reason, say appellants, the ship should have terminated the general average proceeding without processing it completely through adjustment, citing McGraw-Edison Co. v. Trinidad Corp., 1971 A.M.C. 227 (Sup.Ct. New York County 1969), aff'd, 34 A.D.2d 528, 309 N.Y.S.2d 26 (1st Dept.1970). Thus, appellants claim that $52,219.53 of the general average adjustment expense should not be charged against them, inasmuch as it was not incurred in good faith and was not paid for activities that mitigated their damages in any way.
 
 
 12
 In making this contention, appellants rely upon the district court's finding that the ship had "made no showing that it exercised due diligence to make the Farida seaworthy." This lack of proof may have resulted from trial strategy aimed at simplifying the issues in the ship's meritorious claim over against appellants. In any event, it did not establish that the ship should have been aware, six years prior to trial, that it was at fault for the accident. When a master makes general average expenditures, he is acting in the interests of cargo as well as the ship. The Toluma, 72 F.2d 690, 692 (2d Cir. 1934), aff'd sub nom. Aktieselskabet Cuzko v. The Sucarseco,294 U.S. 394, 55 S.Ct. 467, 79 L.Ed. 942 (1935). These expenses are shared by cargo interests in the general average adjustment, Gulf Refining Co. v. Universal Insurance Co., 32 F.2d 555 (2d Cir. 1929); and they may be recovered from a negligent third party in a direct action by cargo, Aktieselskabet Cuzko v. The Sucarseco, supra, 294 U.S. at 403-04, 55 S.Ct. 467 (1935), or by the ship suing for the benefit of cargo, Pool Shipping Co. v. United States, 33 F.2d 275, 277 (2d Cir. 1929). Because the fault of the ship was not at all "free from doubt," Johnson & Higgins v. United States,supra, 287 U.S. at 461-62, 53 S.Ct. 209, its master was justified in proceeding with the adjustment. Although in some cases the unreasonableness of the shipowner's decision to proceed with a general average adjustment may preclude him from recovering such part of his expenses from a wrongdoing third party, we cannot on this record conclude that the district court was clearly erroneous in finding that all the shipowner's expenses were reasonable and should be recovered. The award in this case follows well-established judicial precedent and is therefore approved.[5]
 
 
 13
 All parties agree that interest on the separate items of damage should begin to run on the date when payment therefor was made. The Tanker Hygrade No. 24, Inc. v. The Tug Dynamic, 233 F.2d 444, 447 (2d Cir. 1956). Because the District Court erred in awarding interest from "the time of the first expense in February, 1969", the matter must be remanded in order that interest may be recomputed properly.
 
 
 14
 Remanded solely for recomputation of interest and, in all other respects, affirmed, without costs to any party.
 
 
 
 [1]
 Included among the factual issues is the trial court's assessment of the credibility of witnesses. New York Trap Rock Corp. v. Tug Devon, 371 F.2d 430, 432 (2d Cir. 1967)
 
 
 [2]
 In United States v. Reliable Transfer Co., supra, 421 U.S. at 407, 95 S.Ct. at 1714, the Court said: "When it is impossible fairly to allocate degrees of fault, the division of damages equally between the wrong-doing parties is an equitable solution." We read the language of this opinion as an expression of intent that, where proportionate fault cannot be determined, the traditional rule of equal division should be followed. See also id. at 411, 97 S.Ct. 1708
 
 
 [3]
 The Special Master's report was confirmed with the exception that the total amount awarded was reduced by $53,155.02 for reasons not relevant to this appeal
 
 
 [4]
 For discussions of the basic principles of general average, see G. Gilmore & C. Black, The Law of Admiralty, 244-71 (2d ed. 1975); Cia. Atlantica Pacifica, S. A. v. Humble Oil & Refining Co., 274 F.Supp. 884 (D.Md.1967)
 
 
 [5]
 Although constrained by precedent to concur in affirming recovery for general average adjustment expenses, the writer, speaking only for himself, finds this to be an unsatisfactory disposition. To hold appellants liable for expenses in excess of $50,000.00 for an adjustment of general averages which, to no one's surprise, was never consummated by settlement, is, in the writer's opinion, most inequitable. Where, as here, ship and cargo are damaged by a third person's wrongful act, both may recover from the wrongdoer. His damages are not mitigated one iota by the shifting of loss between the ship and cargo by way of general average adjustment. Indeed, as illustrated by the facts of this case, they are substantially increased. The first of these subsequently consolidated actions was commenced in February, 1970, and the others were instituted soon thereafter. From the outset, the finger of blame was pointed at appellants. The statement of general average was not completed until March, 1972, and settlement thereunder has not been and will not be made. I think it unconscionable that appellants are required to pay more than $50,000.00 for the preparation of this statement which would have become meaningful only if appellants were held to be without fault
 Critics of the doctrine of general average will find strong support for their cause in cases such as this. In an age when insurance can be written to cover every conceivable type of loss, it would seem that a more equitable procedure than that followed herein could be devised to protect the interests of ship and cargo. See Hudson, General Average Defences And "Due Diligence" Disputes, 3 Lloyd's Mar. & Com.L.Q. 416 (1976).