**ZIM ISRAEL NAVIGATION CO., LTD., Plaintiff,**

v.

**3–D IMPORTS, INC., et al., Defendants.**

No. 87 Civ. 8359 (RJW).

United States District Court, S.D. New York.

Dec. 10, 1998.

Order Clarifying Opinion Dec. 23, 1998.

Thacher Proffitt & Wood, New York City (John M. Woods, Jack V. Valinoti, of counsel), for plaintiff.

Mahoney & Keane, New York City (Edward A. Keane, Elizabeth Smith, of counsel), for defendant Hatzlachh Supply, Inc.

## OPINION

ROBERT J. WARD, District Judge.

Defendant Hatzlachh Supply, Inc. ("Hatzlachh") has moved, pursuant to Fed.R.Civ.P. 56(c), for summary judgment. For the reasons hereinafter stated, defendant's motion is granted.

## BACKGROUND

Plaintiff, Zim Israel Navigation Co., Ltd. ("Zim"), is the owner of the container ship Zim Montreal. During October and November 1981, cargo from various ports in the Far East was loaded onto the Zim Montreal to be shipped to ports in North America and Europe. Hatzlachh was the owner and consignee of certain cargo loaded for shipment to the United States. On November 19, 1981, the Zim Montreal suffered a fire that damaged some of the cargo on board, including a portion of the goods owned by Hatzlachh. The bills of lading issued by Zim to the cargo owners, including Hatzlachh, contained the following provision:

> General Average. General Average to be adjusted to any port or place at the Carrier's option, and to be settled according to the York–Antwerp Rules 1974. In the event of accident, danger, damage or disaster before or after commencement of the voyage resulting from any cause whatsoever, whether due to negligence or not, for which or for the consequences of which the Carrier is not responsible by statute, contract or otherwise, the Merchant shall contribute with the Carrier in General Average to the payment of any sacrifice losses or expenses of a General Average nature that may be made or incurred, and shall pay salvage and special charges incurred in respect of the goods.

As a result of the fire, a General Average loss was declared. Zim hired Richards Hogg, Ltd. ("Richards Hogg") to conduct a General Average Adjustment ("Adjustment"), calculating the amount each cargo owner owed to the General Average Fund

("Fund" or "General Average Fund") and how much each owner who suffered a loss was to receive. Richards Hogg issued the Adjustment on November 26, 1987. Since some of Hatzlachh's goods were saved and some lost, the Adjustment showed that Hatzlachh both owed and was owed money. For the portion of its cargo that was saved from the fire, Hatzlachh was to contribute $137,815.82 to the Fund. Hatzlachh was to receive $880,438.91 for its lost goods, resulting in a net payment of $742,623.09.[1]

Pursuant to the General Average clause in the bills of lading, Zim acted as trustee of the Fund. As trustee, it was Zim's responsibility to collect the General Average contributions from those cargo owners whose goods were saved and disburse money to those whose goods were lost. While Zim was able to collect some of the money owed to the Fund, many cargo owners refused to pay their contribution.

On November 24, 1987, Zim commenced this action to collect the contributions owed but not yet paid. Hatzlachh was one of the defendants named in the suit. Many of the other cargo owners ("cargo owners") named brought counterclaims against Zim for damages under the Carriage of Goods by Sea Act ("Cogsa") alleging negligence and the unseaworthiness of the Zim Montreal. Hatzlachh asserted a counterclaim for its proportionate share of the General Average Fund as well as a counterclaim for damages under Cogsa. While its General Average claim was timely, this Court found that Hatzlachh's Cogsa claim was time-barred. See Trial Transcript dated April 21, 1998, at 140.

Zim settled with all of the cargo owners who had brought counterclaims against Zim except Hatzlachh.[2] Pursuant to these settlements, the other cargo owners were not required to pay the full amount of their contri-

bution to the General Average Fund. Those owners with damaged cargo paid 50% of their share under the Adjustment while those with sound cargo paid 75% of what they were to contribute. Additionally, those who were owed money from the Fund were paid 100% of the amount specified in the Adjustment, plus interest through the time of the settlements.

Hatzlachh has brought the present summary judgment motion arguing that because Zim paid the other cargo owners who were owed money 100% of their claims, it is entitled to the full amount of its claim as well. Zim's position is that since it was only able to collect approximately 70% of the Fund, it is only required to pay Hatzlachh 70% of its share under the Adjustment.

## DISCUSSION

Summary judgment is appropriate where the moving party has established that "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). On a motion for summary judgment, the Court must determine "whether the evidence presents a sufficient disagreement to require submission to [the fact finder] or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251–52, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). In making this determination, the Court "must view the evidence in the light most favorable to the non-moving party and draw all reasonable inferences in its favor." *Consarc Corp. v. Marine Midland Bank, N.A.*, 996 F.2d 568, 572 (2d Cir.1993).

Initially, the moving party must show that there is "an absence of evidence to support the nonmoving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325, 106 S.Ct. 2548,

---

1. Both parties have agreed that these numbers accurately reflect the calculations submitted by Richards Hogg. See Stipulation dated November 25, 1998.

2. Under Fed.R.Evid. 408, evidence of offers to settle a disputed claim is not admissible to prove liability for that claim. Such evidence, however, may be admitted if presented for another purpose. Fed.R.Evid. 408. Here, Zim asserts that Hatzlachh is presenting evidence of the settle-

ments with the other cargo owners to show that Zim was negligent in causing the fire on board the ship. Therefore, Zim argues that the evidence is inadmissible. The Court finds that, to the contrary, the evidence is presented merely to show that Zim has not made Hatzlachh the same settlement offer that it made to the other cargo owners. Accordingly, the evidence is admissible for this purpose.

91 L.Ed.2d 265 (1986). Once the moving party has carried its burden under Rule 56, the non-moving party must set forth "specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(e). The non-moving party is required to introduce evidence beyond the mere pleadings to show that there is an issue of material fact concerning "an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322, 106 S.Ct. 2548. Hatzlachh contends that it is entitled to summary judgment under both the law of General Average and the principles of trust law.

## I. General Average

■ General Average is an ancient doctrine, referring to rules apportioning loss suffered by cargo owners whose goods are sacrificed in a maritime adventure. *See generally, Empire Stevedoring, Co. v. Oceanic Adjusters, Ltd.*, 315 F.Supp. 921, 927 (S.D.N.Y.1970); Grant Gilmore & Charles L. Black, Jr., *The Law of Admiralty* § 5–1 (2d ed.1975). It is based on the principle that "what is in the time of danger given or sacrificed for the sake of all, shall be replaced by the contribution of all." Lowndes & Rudolf, *General Average and the York Antwerp Rules* ¶ 31 (10th ed.1975). Therefore, when one partner in the adventure sacrifices its cargo or incurs expenses for the general safety of the ship and other cargo, the loss is assessed against all participants in proportion to their respective share in the adventure. *See Empire Stevedoring*, 315 F.Supp. at 927.

Today, contribution in General Average is recognized by all major maritime nations. *Id.*; Gilmore & Black, *supra*, § 5–1. Current law and practice governing the apportionment process is, for the most part, determined by the York–Antwerp Rules. *Cia. Atlantica Pacifica, S.A. v. Humble Oil & Refining Co.*, 274 F.Supp. 884, 891 (D.Md. 1967) While the York–Antwerp Rules are not themselves binding, they are often incorporated into bills of lading and thus the parties become contractually bound by them. *Id.*; Lowndes & Rudolf, *supra*, ¶ 31. Since the bills of lading issued by Zim included a provision adopting the York–Antwerp Rules, they are binding here.

■ Once a General Average event has been declared, the shipowner must apportion the loss among all of the cargo owners. Although professional adjusters are often hired to conduct the necessary accounting, it is the shipowner who is ultimately responsible for making sure that the cargo owners whose goods were lost receive their proportionate share of the General Average Fund. *See The Emilia S. De Perez*, 22 F.2d 585, 586 (D.Md. 1927). Consequently, a cargo owner who has not received its share of the Fund has a right in personam against the owner of the vessel.[3] *United States v. Atlantic Mut. Ins. Co.*, 298 U.S. 483, 489, 56 S.Ct. 889, 80 L.Ed. 1296 (1936); *The Emilia S. De Perez*, 22 F.2d at 586.

■ The parties here do not dispute that an event of General Average occurred, nor do they contest the calculations contained in the Adjustment. Rather, their dispute centers on whether a shipowner can be held liable for failure to apportion the loss suffered by cargo owners equally among all of the participants in the adventure.

Hatzlachh argues that Zim must pay Hatzlachh the same proportion of Hatzlachh's loss set forth in the Adjustment as it paid the other cargo owners. Since Zim paid the other owners 100% of what they were to receive, Hatzlachh claims that it is entitled to 100% as well. However, Zim only required the other cargo owners to pay between 50–75% of their contributions to the General Average Fund. As a result Zim was only able to collect 70% of what Hatzlachh was owed. Zim contends that because it only recovered 70% of the Fund, Hatzlachh is only entitled to 70% of its proportionate share.

**3.** While these actions usually arise in the context of a shipowner's failure to exercise a lien on the surviving cargo before returning it to the cargo owners, the shipowner remains liable to those with damaged goods for their General Average share even after the necessary security is obtained. *See generally The Emilia S. De Perez,* 22 F.2d at 586 (finding a cause of action by cargo owner against shipowner where shipowner had collected the deposits from those with saved goods but never paid the cargo owner what it was owed).

■ General Average is an equitable doctrine. It does not require that every partner who suffers a loss be fully compensated, but it does require that all partners to the adventure share the loss equally. Gilmore & Black, *supra,* § 5–1. Therefore, Hatzlachh is entitled to the same percentage of its claim as all of the other owners whose cargo was lost. Since Zim paid all of the other cargo owners 100% of their proportionate share under the Adjustment, it must pay Hatzlachh 100% as well.[4]

Zim accurately notes that it cannot be held personally liable for the damaged cargo absent evidence that it was negligent in causing or dealing with the fire. However, Zim overlooks the fact that even if it was not negligent with respect to the fire, it can still be held liable for the money owed to cargo owners who suffered a loss where it is at fault for failing to collect sufficient contribution to satisfy their General Average claims. *See Master Shipping Agency, Inc. v. M.S. Farida,* 571 F.2d 131, 134 (2d Cir.1978) (commenting that it is "the responsibility of the ship to see that cargo interests contribute to the general average fund or furnish security for such contribution") (citations omitted); *Heye v. North German Lloyd,* 33 F. 60, 70 (S.D.N.Y.1887) (noting that the failure of a shipowner to hold cargo until each contributor pays or a bond is secured constitutes a breach of maritime obligation resulting in an action for contribution against the shipowner) (citations omitted); *The Emilia S. De Perez,* 22 F.2d at 586 (finding a valid cause of action by cargo owner who suffered a loss against shipowner where shipowner collected necessary security but cargo owner never received its share of the fund).

Zim was responsible for collecting and disbursing the General Average Fund. However, Zim compromised the Fund in order to settle litigation brought against Zim personally. All of the other cargo owners had brought timely Cogsa actions against Zim.[5] In order to settle these claims, Zim agreed to pay the owners the full amount they were to receive under the Adjustment and only required them to pay a fraction of their contribution to the Fund.[6] As a result of the settlements, Zim had an insufficient amount of money to pay Hatzlachh what it was owed. Since Zim used the General Average Fund to settle claims for which it could have been held personally liable, it is responsible for the low level of recovery and therefore is liable to Hatzlachh for the full amount of its proportionate share as set forth in the Adjustment.

## II. Breach of Fiduciary Duties

■ Hatzlachh also argues that Zim breached its fiduciary duties to Hatzlachh when it paid all of the other beneficiaries of the Fund 100% of their claims and only offered Hatzlachh 70%. This Court agrees. Since Zim was responsible for collecting the General Average contributions and disbursing the money, it acted as trustee for the

4. Not only should Hatzlachh receive 100% of its claim under the Adjustment, but it should only be required to pay 50% of its contribution to the General Average Fund. While the cargo owners whose goods were saved were required to pay 75% of their contribution to the Fund, those like Hatzlachh, who suffered a loss, were only required to pay 50% of their share. Therefore, Hatzlachh too should only have to pay 50%. To require Hatzlachh to pay more would require it to bear a disproportionate share of the loss since Hatzlachh would be paying more into the Fund than the other owners with lost goods.

5. Under Cogsa, a cargo owner can recover against a shipowner for any damage to cargo caused by the shipowner's negligence or failure to exercise due diligence in making the vessel seaworthy. Lowndes & Rudolf, *supra,* ¶ 74. Unlike recovery in General Average, the cargo owner who can establish the shipowner's liability recovers from the shipowner personally. Moreover, a shipowner who is found liable under Cogsa cannot claim contribution in General Average for its own loss. Gilmore & Black, *supra,* § 5–13. Consequently, if the cargo owners who brought Cogsa claims against Zim had succeeded in establishing Zim's negligence and lack of due diligence, Zim would have had to pay the full amount of their damages out of pocket and would not have been able to collect the § 447,-490.07 it received from the General Average Fund for its own loss. Affidavit of Edward A. Keane dated April 29, 1997, Exhibit 7.

6. Zim admits that it refused to settle with Hatzlachh on the same terms as the other owners because Hatzlachh's Cogsa claim was time-barred. Plaintiff's Memorandum of Law in opposition to Motion for Summary Judgment dated July 27, 1998, at 11.

General Average Fund. Defendant Hatzlachh's Statement of Uncontested Facts Pursuant to Local Rule 56.1 dated June 17, 1998, ¶ 7 & Plaintiff's Opposition to Defendant's Statement of Undisputed Facts dated July 27, 1998, ¶ 7; 1 Scott on Trusts § 12.2 (Fratcher 4th ed. 1987) ("When a person collects money for another, he ordinarily has no right to use the money as his own and is a trustee of the money and not a debtor."). Zim, therefore, owed a fiduciary duty to Hatzlachh and all other cargo owners.

Under the Restatement, "[a] person in a fiduciary relation to another is under a duty to act for the benefit of the other as to matters within the scope of the relation." *See* Restatement (Second) of Trusts § 2 cmt. b (1957). While all fiduciary relationships share certain characteristics, "the duties of a trustee are more intensive than the duties of some other fiduciaries." *Id.; See also* Scott, *supra,* § 2.5 Among the many fiduciary obligations of a trustee is the duty to deal impartially with the beneficiaries of the trust and to be loyal to their interests. Scott, *supra,* §§ 170, 183.

■ New York Law imposes on trustees an obligation to "accord impartial treatment to beneficiaries." *Withers v. Teachers' Retirement System,* 447 F.Supp. 1248, 1257 (S.D.N.Y.1978) (citing *Redfield v. Critchley,* 252 A.D. 568, 300 N.Y.S. 305, 310 (N.Y.App. Div.1937), *aff'd,* 277 N.Y. 336, 14 N.E.2d 377 (1938); Scott, *supra,* § 183). Zim acknowledges that it acted as trustee for the Fund and that it owed a fiduciary duty to Hatzlachh, but claims that it did not breach this duty. It is Zim's position that since Hatzlachh's Cogsa claim was time-barred, Hatzlachh was not in the same position as the other cargo owners and therefore Zim was not required to treat Hatzlachh the same as the other claimants. While it is true that this Court found Hatzlachh's Cogsa claim time-barred, the timeliness of the claim has

no bearing on whether Hatzlachh is entitled to the same proportion of its share under the Adjustment as the other cargo owners.

Cogsa claims are brought against the shipowner to recover the actual damage to the cargo owner's goods. Claims in General Average are brought against the trustee of the General Average Fund to collect the owner's proportionate share under the Adjustment. Not only do the two claims fall under separate legal doctrines but they are essentially brought against two different parties. The appropriate question therefore is not, as Zim contends, whether the parties are similarly situated for purposes of their Cogsa claims, but rather whether they are similarly situated with regard to their claims in General Average. This Court finds that they are.

Like all of the other cargo owners, Hatzlachh suffered a loss because of a General Average event and like all of the other owners, Hatzlachh was entitled to payment under the Adjustment. Unlike the other owners, however, Hatzlachh was not offered 100% of its claim. In sum, for purposes of its claim for its share of the General Average Fund, Hatzlachh was in the same position as the other cargo owners and Zim should have treated it as such. Failure to do so amounted to a breach of Zim's fiduciary duty to treat all beneficiaries impartially.[7]

Zim also breached its fiduciary duty of "undivided and undiluted" loyalty. *Birnbaum v. Birnbaum,* 73 N.Y.2d 461, 541 N.Y.S.2d 746, 539 N.E.2d 574, 576 (N.Y.Ct. App.1989). The duty of loyalty has been described as "a sensitive and "inflexible" rule of fidelity, barring not only blatant self-dealing, but also requiring avoidance of situations in which a fiduciary's personal interest possibly conflicts with the interest of those owed a fiduciary duty." *Id.* at 576 (quoting *In re Ryan's Will,* 291 N.Y. 376, 52 N.E.2d 909, 923 (N.Y.App.1943)). Here, Zim essentially concedes that it engaged in self-dealing when

---

7. Zim also argues that even though it was entitled to treat Hatzlachh differently, it did, in fact, make Hatzlachh the same settlement offer as the other cargo owners. In 1994, Zim agreed to pay Hatzlachh 100% of its claim under the Adjustment and accept only 50% of Hatzlachh's contribution to the General Average Fund. However, Zim was only willing to pay Hatzlachh interest through the time that Zim settled with the other cargo owners, which was in 1990. The Court finds that because Zim was unwilling to give Hatzlachh interest through 1994, even though Zim had the use of that money through 1994, the settlement offer was not, in fact, the same as those made to the other cargo owners.

it settled this lawsuit with the other cargo claimants.

Zim stated that it gave the other owners 100% of their contribution and only offered Hatzlachh 70% because the other owners had brought timely Cogsa claims against Zim while Hatzlachh's claim was time-barred. In other words, Zim admits that it settled with the owners for the full amount of their General Average claims and only required them to pay 50–75% of their contribution to the Fund in order to avoid litigating Cogsa claims that were raised against Zim personally. Zim, therefore, used trust funds to settle its personal obligations. As a result, there was not enough money in the Fund to pay Hatzlachh 100% of its share under the Adjustment. Zim, trying to avoid potential liability, put its own interests above those of Hatzlachh, a beneficiary of the Fund, and therefore breached its duty of loyalty. As Zim breached both its duties of loyalty and impartiality, it is liable to Hatzlachh for Hatzlachh's full proportionate share of the General Average Fund as specified in the Adjustment.

### III. Prejudgment Interest

 It is well established that federal courts sitting in admiralty may award pre-judgment interest at their discretion. As a general principle, "[a]llowance of pre-judgment interest in admiralty [actions] ... should be granted in the absence of exceptional circumstances." *Mentor Ins. Co. v. Brannkasse,* 996 F.2d 506, 520 (2d Cir.1993) (quoting *Mitsui & Co. v. American Export Lines, Inc.,* 636 F.2d 807, 823 (2d Cir.1981)). The allowance of interest is not punitive but instead is compensation for the use of money that the prevailing party is entitled to but which its adversary had use of prior to judgment. *Reading & Bates Corp. v. All American Marine Slip,* 953 F.Supp. 92, 94 (S.D.N.Y.1997) (citations omitted).

 One basis for denying prejudgment interest is unreasonable delay by the party seeking interest. *City of Milwaukee v. Cement Division, Nat'l Gypsum Co.,* 515 U.S. 189, 196, 115 S.Ct. 2091, 132 L.Ed.2d 148 (1995) (citations omitted). This Court does not find that Hatzlachh delayed unreasonably in bringing its claim for contribution against Zim. While the fire occurred in 1981 and Hatzlachh did not bring its claim for eight years, the Adjustment determining how much Hatzlachh was entitled to receive was not released until 1987. Hatzlachh brought its General Average claim in 1989, just two years after the final calculations were made by the adjuster. Furthermore, there is no evidence of unreasonable delay or dilatory tactics during the course of this lawsuit. Contrary to Zim's position, refusing settlement offers and substituting attorneys does not amount to undue delay. Since the Court finds no extraordinary circumstances here, Hatzlachh is entitled to prejudgment interest.

 The choice of interest rate and whether it is to be compounded are also within the court's discretion. *Brannkasse,* 996 F.2d at 520. However, it has been noted that the award should be based on "short-term risk-free obligations." *Independent Bulk Transport, Inc. v. Vessel "Morania Abaco,"* 676 F.2d 23, 27 (2d Cir.1982); *ETS Gustave Brunet, S.A. v. M.V. "Nedlloyd Rosario," M.V.* 929 F.Supp. 694, 714 (S.D.N.Y. 1996). Since all of the other cargo owners who settled with Zim in 1990 received simple interest at the rate of 9.25% for the period from November 26, 1987 through December 1990, Hatzlachh is entitled to receive the same interest for that period.[8] For the period after December 1990 until judgment, interest shall be calculated based on the average interest rate paid on six-month United States Treasury Bills to be compounded annually. *See e.g., McCrann v. United States Lines, Inc.,* 803 F.2d 771, 774 (2d Cir.1986) (approving award of prejudgment interest in admiralty case based on six-month Treasury bill rates); *Middle East Eng'g. & Dev. Co. v. Arkwright–Boston Mfrs. Mut. Ins. Co.,* 675 F.Supp. 855, 859 (S.D.N.Y.1987) (basing prejudgment interest in admiralty case on average interest rate paid on six-month Treasury bills). The Court finds that this is sufficient

---

8. Prior to November 26, 1987, the interest rate, as dictated by the York–Antwerp Rules, was 7%. This rate is reflected in the Adjustment. *See* Rule XXI, York–Antwerp Rules, 1974.

to compensate Hatzlachh and to put it in the position it would have been in had Zim not withheld Hatzlachh's share of the General Average Fund.

## IV. Attorneys' Fees

Hatzlachh also urges this Court to grant it attorneys' fees. While this Court has the power to award such fees in the interests of justice, they are generally not awarded unless the prevailing party's opponent acted "in bad faith, vexatiously, wantonly, or for oppressive reasons." *Hall v. Cole,* 412 U.S. 1, 5, 93 S.Ct. 1943, 36 L.Ed.2d 702 (1973) (quoting J. Moore, 6 *Federal Practice* ¶ 54.77(2), p. 1709 (2d ed.1972)). In addition, an award of fees under the bad faith exception will only be upheld where there is "clear evidence" that the actions were "without color" and were brought "for reasons of harassment or delay or for other improper purposes." *Dow Chem. Pac. Ltd. v. Rascator Maritime S.A.,* 782 F.2d 329, 345 (2d Cir. 1986) (quoting *Weinberger v. Kendrick,* 698 F.2d 61, 80 (2d Cir.1982)). In other words, the focus is not on the party's actions prior to the lawsuit but rather its behavior during the course of the litigation. *Id.*

This Court does not find that Zim acted in bad faith or brought this action against Hatzlachh for any oppressive reason. Although Hatzlachh was a net payee under the Adjustment, there is no evidence that Zim brought this suit to harass Hatzlachh. Nor has Zim engaged in delaying tactics since bringing the suit or in any way acted improperly. Accordingly, an award of attorneys' fees is not warranted.

## CONCLUSION

Defendant's motion for summary judgment is granted and Hatzlachh is awarded judgment in the amount of $811,531.00 together with interest and costs.[9]

Settle judgment on notice.

---

9. This figure was arrived at by taking the difference between Hatzlachh's proportionate share under the Adjustment, which is $880,438.91 and 50% of the contribution Hatzlachh owes to the General Average Fund, which is $137,815.82. Interest should be calculated according to the discussion in Section III.